

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| CONNIE M. BRATCHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-226-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Connie M. Bratcher seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

Bratcher brings four points of error for the court's review. In her first point of error she contends that the Administrative Law Judge (ALJ) failed to apply the correct legal standard in concluding that her depression was not severe. In two other points of error she contends that the ALJ's decision is not supported by substantial evidence because he failed to accord proper weight to the opinions of her treating physician and because he did not incorporate all her impairments into the hypothetical question to the vocational expert. Finally, she contends that remand should issue for further consideration of evidence not

available to the ALJ but later submitted to the Appeals Council. She contends that this evidence confirmed a diagnosis of multiple sclerosis and explains inconsistencies in other medical evidence in the record.

Bratcher's contentions in regard to the evidence submitted to the Appeals Council are particularly compelling. The evidence submitted to the Appeals Council significantly detracts from the evidence cited by the ALJ and the rationale he used to support his decision. For these reasons, the Commissioner's final decision is not supported by substantial evidence and remand should issue for further administrative proceedings.

I. **Discussion**

Bratcher testified at a hearing before the ALJ that she was 50 years old, previously worked as a registered nurse, and could not work because of relapsing, remitting multiple sclerosis (Tr. 650, 652-53.) She claimed that her condition caused weakness; fatigue; dizziness; vision problems; muscle pain, spasms, and weakness; memory and concentration problems; and made it difficult for her to walk. (Tr. 654-55, 659.)

The medical records show a medical basis for Bratcher's subjective complaints. During the spring of 2001, she underwent a number of eye tests and examinations to determine the cause of blurred and double vision. (Tr. 140, 193, 198.) On May 4, 2001, an ophthalmologist gave her condition a differential diagnosis of optic neuritis and retinal degeneration. (Tr. 140-41.) In the summer of 2003, however, her treating neurologist diagnosed Devic's Disease with recurrent optic neuritis and spasticity. (Tr. 552, 563, 583.)

2

Devic's Disease, often described as a variant of multiple sclerosis, is an autoimmune disorder that results in transverse myelitis (the breakdown of the fatty, protective covering of the spinal cord) and optic neuritis (inflammation of the optic nerve). *See* www.ninds.nih.gov/disorders/devics/devics.htm; Tr. 555. The disorder is "closely linked to multiple sclerosis" and usually appears before symptoms of multiple sclerosis occur. www.ninds.nih.gov/disorders/devics/devics.htm.

In Bratcher's case, however, physicians noted symptoms of multiple sclerosis before the diagnosis of Devic's Disease. As early as the spring of 2001 her physicians suspected that she suffered from a neuromuscular disorder and ordered tests to determine the cause of her symptoms. (*See e.g.*, 331.) On March 26, 2001, Bratcher underwent a cerebral Magnetic Resonance Imaging (MRI) test but the results revealed only a mild degree of microvascular changes. (Tr. 329.) The records indicate that she underwent a spinal tap to rule out multiple sclerosis on April 27, 2001; however, there is no discussion of the results in examination notes from her physicians. (Tr. 140, 362, 415.)

Despite the absence of an affirmative finding from objective studies, Bratcher's physicians continued to believe that she had multiple sclerosis, provided treatment accordingly, and were of the opinion that the condition imposed significant limitations on her physical and mental abilities. (Tr. 545–49, 558, 593-98, 611.) Her primary care physician, Patrick Edwards, M.D., noted objective signs of generalized weakness, impaired fine motor skills, gait disturbance, and problems with equilibrium, decreased vision and hearing, and

heat intolerance. (Tr. 545, 549.) He believed her symptoms consistently affected her attention and concentration and restricted her physical abilities to such an extent that she was incapable of performing even sedentary, low stress jobs. (Tr. 546–49.)

Bratcher's treating neurologist, William H. Gordon, M.D., described Bratcher's multiple sclerosis as relapsing and remitting and noted a number of symptoms including fatigue, weakness, severe spasms, balance problems, tremor, double or blurred vision, and problems with fine motor skills. (Tr. 593-94; *see* Tr. 555.) As Dr. Edwards, Dr. Gordon believed that Bratcher's symptoms were significantly limiting and rendered her disabled. (Tr. 593-98.)

The ALJ rejected these opinions in part because he found that they were not supported by objective evidence. (Tr. 21.) He noted that several tests failed to detect multiple sclerosis. (Tr. 20.) At the hearing he indicated that he disbelieved that Bratcher suffered from multiple sclerosis and indicated that he doubted her testimony in regard to the severity of her symptoms. Specifically, he told Bratcher's husband that although Bratcher believed she had multiple sclerosis and was treated for multiple sclerosis, she did not have the objective signs of the disease and that "to the extent that she believes that she has all these things . . . she has a mental problem." (Tr. 668.) He went on to state that her symptoms were subjective and that her problems were "probably mental more than anything else." (Tr. 669.)

It appears that the ALJ rejected both Bratcher's testimony regarding her symptoms and her physicians' opinions regarding the disabling nature of her medical condition

4

primarily because objective tests, such as the MRI and spinal tap, did not confirm a diagnosis of multiple sclerosis. (Tr. 20-21, 668-69.) However, the diagnosis of multiple sclerosis was confirmed in evidence generated after the hearing and not available to the ALJ.

On April 28, 2004, Bratcher underwent an MRI examination that revealed "several small high density spots . . . compatible with [a] clinical diagnosis of multiple sclerosis." The physician interpreting the MRI noted that high density lesions were better visualized in the MRI as compared to prior MRIs because of better image quality. (Tr. 618; compare Tr. 220 (MRI from January 28, 2002.))

Bratcher submitted new evidence, including the results of the new MRI study, to the Appeals Council with her request for review. The Appeals Council stated that it considered the new evidence but that the evidence did not provide a basis for changing the ALJ's decision. (Tr. 7.) Bratcher argues that there is no indication that the Appeals Council adequately reviewed the new evidence. She argues that it is significant that the Appeals Council did not specifically evaluate the MRI study because it provides evidence that confirms her physicians' diagnosis of multiple sclerosis and explains the negative findings of the previous MRI studies.

The Commissioner argues that the Appeals Council is not required to articulate its reasons for finding that new evidence does not provide a basis for changing an ALJ's decision. She further argues that the MRI study is merely cumulative of other evidence because, as Bratcher stated, it confirms the earlier clinical diagnosis of multiple sclerosis and because the report indicates "no significant interval change," and, thus, does not reflect

changes in Bratcher's condition. Finally, she argues that 42 U.S.C. § 405(g) limits judicial review to final decisions of the Commissioner, that the Appeals Council's denial of review is not such a decision, and that judicial review in this regard would be outside the scope of review authorized by Congress.

The Commissioner's arguments regarding the significance of the MRI study are unpersuasive. Although Bratcher does argue that the MRI confirms her physicians' diagnoses of multiple sclerosis, the ALJ disbelieved those diagnoses because objective studies did not confirm them; therefore, the MRI is particularly significant. In addition, although the MRI study does state that there was "no significant interval change," it is unclear whether the lack of interval change either bolsters or detracts from the ultimate impression that the findings were "compatible with [a] clinical diagnosis of multiple sclerosis." (Tr. 618.) Further, because the physician who interpreted the findings indicated that lesions in Bratcher's brain were better visualized in the MRI study as compared to prior studies, the new MRI study not only confirms the diagnosis of multiple sclerosis, it also provides an explanation as to why previous MRI studies in the record did not confirm the diagnosis.

Finally, in light of *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005), the Commissioner's argument regarding the scope of judicial review is unavailing. In *Higginbotham*, the Fifth Circuit Court of Appeals put to rest questions concerning whether an Appeals Council's denial of review is subject to judicial review. *Id.* at *1, 4; *but cf. Masterson v. Barnhart*, 309 F.3d 267, 274 n.3 (5th Cir. 2002) (Acknowledging a split of

6

authority among other circuits regarding the question but refusing to settle the question for the Fifth Circuit because the parties did not brief the issue.) Specifically, the court held that under 42 U.S.C. § 405(g), a "final decision of the Commissioner of Social Security" includes an Appeals Council's denial of a claimant's request for review and evidence submitted for the first time to an Appeals Council is part of the record subject to judicial review. *Higginbotham*, 405 F.3d at 337. Thus, contrary to the Commissioner's argument, the Appeals Council's denial of Bratcher's request for review is within the scope of judicial review and relevant to the court's determination as to whether the Commissioner's decision is supported by substantial evidence.

The court is authorized to determine whether a final decision of the Commissioner is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Notwithstanding the court's limited review, the record must be reviewed in its entirety to determine whether there is substantial evidence to support the Commissioner's decision. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court's task in this regard requires more than a "simple search of the record for isolated bits of evidence" that would support the Commissioner's decision; rather the record must be considered as a whole. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986) (citation omitted); *see also Higginbotham*, 405 F.3d at 335 ("A reviewing court may not . . . examine only evidence favorable to the Commissioner; it must also examine contrary evidence") (citation omitted). Therefore, a court must consider evidence that detracts from supporting

evidence. *Singletary*, 798 F.2d at 822-23(quotation omitted).

In this case, the MRI study from April 28, 2004, detracts from the Commissioner's final decision. As in *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980), this is a case in which the Appeals Council accepted and acknowledged new evidence but "perfunctorily adhered to the decision of the hearing examiner" rather than adequately evaluating the new evidence. Therefore, the court should remand Bratcher's case for further consideration of her claim in light of the new evidence submitted to the Appeals Council. *Id.*; *Higginbotham*, 405 F.3d at 337.

Bratcher's remaining points of error do not, standing alone, require remand. Her concerns regarding the weight the ALJ accorded to the opinions of Drs. Edwards and Gordon may be resolved on remand in light of the new objective evidence that provides support for their opinions. Bratcher's argument that the ALJ did not direct a proper hypothetical to the vocational expert may, likewise, be resolved on remand. Finally, her contention that the ALJ failed to apply the correct legal standard in determining that her depression was not severe is without merit. The ALJ applied the correct standard as articulated in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), and his determination is supported by substantial evidence. (Tr. 158-59, 425-27, 436-48, 450-62, 671.)

## II.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Bratcher's case for further administrative proceedings consistent with the foregoing discussion.

III. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____ June 10 _____, 2005.

NANCY M. KOENIG
United States Magistrate Judge